Case number 19-7153, Teco Guatemala Holdings, LLC v. Republic of Guatemala Appellants. Mr. Baldwin for the appellants, Ms. Maneker for the appellate. Good morning, counsel. Good morning, your honor. My name is Edward Baldwin and I'm appearing on behalf of the is a unique case in a much different way. My colleague, opposing counsel, and I spend a lot of time in the ICSID system, the International Center for the Settlement of Investment Disputes, which is referred to as ICSID. And it's a unique system. So this is not your standard arbitration enforcement case in which there's a case under the New York Convention or some other case that's being heard. And that has lots of implications that will arise throughout this the rise throughout the case. So there are issues here that are a matter of first impression in the circuit. And as far as we're aware anywhere, one of those has to do with the unique procedural history in the ICSID where you had an original tribunal, then you had an annulment mechanism, which was applied in this case, resulting in a partial annulment. And then you had essentially a second arbitration or resubmitted arbitration. All of those have the same case number, have given the same ICSID arbitration number. All of those are before ICSID. It's all a self-contained system, which is different when a different issue might be sent to one tribunal or to another. So that makes it different with regard to both the complete arbitration rule issues and also the Rule 60. Can I ask you just to follow up on that procedurally? I understand there's now been an award in the latest round, the post-annulment round from another arbitration tribunal dealing with the costs, fees on costs, and what I, or excuse me, interest on costs. And do you know what the status of that is? Has anyone moved to annul that, or has that been finalized, or what is the timeframe for it becoming finalized or seeking annulment? I'm not counsel for the Republic in that case, so I'm limited in what I can know. But the client's the same, but only the client could have answered that question for you. The client is that there's confidentiality issues that go with regard to the case, but I, my opposing counsel can discuss this, but I will say, as far as I'm aware, based on recent discussions, there is no decision on the request for revision. Once that, I can say that once that request for revision or interpretation is completed, then there will be an opportunity to seek annulment within 120 days of that second award. So, the second award is not final, and it's subject to an annulment period that I don't believe is run, only should start to run once that revision is made. Okay. And that makes sense. I'm sorry, is the revision separate from seeking annulment? Yes, it's separate. What is the timetable for that? I don't want you to reveal any confidence, but I'm just trying to figure out the timing here of when this second arbitration is going to be final. I don't know when, and I'm not sure my, I'm not sure TICO's counsel will know either, because it's up to the arbitration tribunal to do it, and there's, I don't think they have a set time frame in that case. Sometimes cases can take a year, or, you know, sometimes they're, they're done very quickly. So, assuming it's not been done yet, it's, I don't think there's a deadline by which we'll know when the court will do that. But even once that happens, you have 120 days. Let me ask you, counsel, you started out by saying it is a self-contained system, and yet I understand you want to add a rule of completeness as has been applied by the courts under federal arbitration law. Wouldn't that be inconsistent with the convention? No, Your Honor, I don't think it would be inconsistent with the convention, because the purpose of the, there's nothing in the convention or in the implementing language that talks about the complete arbitration rule makes any reference. Well, it doesn't speak in that language, but it does set up a system whereby once there is a decision, you could move for a stay. And that would be true of the original award, of the annulment. So, why isn't that the completeness option offered under the convention? In other words, it's through a series of stays that I'll say the party against whom the award has been rendered can in effect postpone, if the request for a stay is granted, the effectiveness of the award. And that would not be the same thing as what you're seeking in a rule of completeness. Stay everything until all these decisions have been rendered under this case number against your client. Your Honor, I would note that those rules were in the Ixod convention were a party of discussion negotiation between many sovereigns in which the Republic of Guatemala is a party to that convention. That convention sets up procedures that are specific to Ixod. What the complete arbitration rule is not about Ixod. It's about the courts and it's about efficiency. It's about other issues. When you look at the basis for the complete arbitration rule, it's so you don't have cases being decided piecemeal and a system that might allow for a stay does not deprive this court or the district court of deciding that it's better to wait to enforce or that it should wait to enforce decisions once the arbitration is complete because that doesn't have anything to do with the Ixod convention. Well, what about article 53? That's recognition and enforcement. And paragraph two says for purposes of this section, an award shall include any decision. So when I read that, I thought, well, that's not the type of completeness that you've been arguing for. It allows the winning party to have an award, an award is in quotation marks, provided it's properly certified and come to the court. And the courts may be, how should I put it, the victims of having multiple requests for enforcement, but that's the system that was set up. And that's why I'm asking, how could a court impose a rule of completeness when, in effect, you're seeking an interest of the court and Ixod gives you the opportunity to act in the interest of your client by seeking a stay? That's what I'm trying to understand. It's all very nice for you to argue about our efficiency, but if it's a self-contained system and the courts have jurisdiction, and this very limited jurisdiction, since we're to give full faith and credit, how can we develop another system that says we're not going to act as Article 53 provides? We're going to say to TICO, hold on there, we're not going to deal with this until this matter is completely resolved. Your Honor, what I would say to that is that, again, if you look at Article 53, and I'm going to just read from the language here, it talks, it says, this is in paragraph- I have it in front of me. Okay, so it says there that the award shall be binding on the parties and shall not be subject to any appeal or remedy. That's what it's talking about with the enforcement. We're not suggesting that the complete arbitration rule means that the award can never be enforced. What we're saying is it's improper to enforce it at this point, that we should wait till the end. There's nothing in court that doesn't have the power to decide whether or not something should happen. Move on to Article 54. Okay. Article 54 says, for the purposes of the section, the award shall include any decision interpreting, revising, or annulment. But again, you have to read articles- Oh, I'm sorry, move on to Article 54. I'm sorry, I thought you meant paragraph two. Article 54, paragraph two. Right. And again, Your Honor, this is not saying, this is talking about whether or not an award, whether or not there's remedies to an award, or how an award should be treated. But this does not prevent this court from exercising its duties to decide whether or not efficiency or engaging in piecemeal. I mean, it's hard for me to believe that if there was a exit arbitration tribunal that was sending interim awards every couple of weeks, that this court would allow those awards to continue. Well, that may be an interesting hypothetical, but that's not our case. I'm just trying to look at this convention and what it contemplates. And while there's not a lot of law out there, the question of whether or not the system you're suggesting that the courts ought to adopt is consistent with the convention. And I haven't heard you say it is, but rather you're arguing we shouldn't be taxed with these interim awards, et cetera. Well, Your Honor, I do think it is. And let me be clear that I do think it is. Because again, Articles 53 and 54 are talking about remedies and an award being enforced. The timing of that enforcement is up to the court. It's a matter for the court to decide whether or not it can be enforced at a particular time. It doesn't annul or appeal or vacate. We're not asking for the award to be vacated such that it can never be enforced. We're asking about the complete arbitration rule. So we could hold it in advance. Well, in fact, that happens. If there's an Owens, Illinois v. Venezuela case that's an exit case that was stayed for a period of time. There's others. I just don't... But was that case stayed because of the complete arbitration rule? No. The Owens, Illinois one? I don't believe this complete... Because of the unique facts of this case, Your Honor, I don't think the complete arbitration rule... What was the reason that one was stayed? Owens, Illinois? It was stayed because the annulment was going on at the time. Because keep in mind, as was pointed out, Articles 53 and 54 allow for a stay or there might be a provision to stay with exit, but then you can bring it. So the district court in D.C. has stayed decisions or held decisions in abeyance pending this issue. Do you have examples other than this Owens, Venezuela case? So you think this is standard operating procedure in the district courts? Because I got the impression that the district courts are routinely, almost summarily, enforcing these exit awards. But I don't know the underlying facts. I believe I could submit a letter to the clerk outlining other cases, but I can certainly say with Owens, Illinois that that case was stayed. And I think there have been others that have been stayed, not because of the complete arbitration rule, because it's not been challenged, but for other reasons. So I wanted to... I'm sorry, Tim. I want to let you get to your points, but I had another question that's related to Judge Rogers' line of questioning. What are the standards for obtaining a stay from a post-annulment, a new tribunal post-annulment? Is there a legal standard for the stay? What is the test? If you're talking about a stay from the tribunal that's hearing the second arbitration... Right, that has the authority to stay enforcement of the non-annulled portions. Do you know what that standard is? I think... I'm trying to recall. I think that standard would... In essence, that standard would essentially be up to... It would be in the discretion of the arbitration tribunal as a head. There's no common understanding of what you have to show to get such a stay? They just make it up as they go along? There may be, but as has been pointed out in this case, there's no stare decisis in international law. I'm not going to stare decisis. I'm just asking for a principle for getting a stay. So you ask and they can go, we tossed a coin and you don't get a stay, or we tossed a coin and you do get a stay? Or do you have to show lack of finality or concerns about complete arbitration? I don't think it would be lack of finality necessarily. I think it would more have to go with the equities of the case. And there are cases that get stayed in the annulment phase. There are cases that don't get stayed in the annulment phase. I'm not aware of any cases being brought before a second tribunal to stay the enforcement of the original case. And I'm not sure sitting here that... That's what everyone says the remedy, this whole process is that the remedy is if you don't want the non-annulled portions to be enforced while the second round of arbitration is going on, then you just ask that new arbitration panel to stay the non-annulled portions of the award. That seems to be the practice that's envisioned here. I, you know, to be quite frank, Your Honor, I don't know that that is the practice or where that would arise from. And I'm sure counsel Patiko can address this. Tribunals will hear all manner of applications, much different than the U.S. court system. There are certain motions that are proper, others that aren't. You could make perhaps almost any application to a tribunal because you have those parties before you. But I do not think it's standard to request that, nor do I know of a specific mechanism. Do you just see that Guatemala could have sought a stay from this tribunal of the non-annulled, enforcement of the non-annulled portions? I'm going to fully admit that I could be missing something here, but I don't think there's anything in the rules that give it some right to do it. But as I mentioned, you can always ask the tribunal for anything, almost. And most of that, you know, I don't know that it's within the tribunal's kin or authority here to make that determination. It may be, but it's a, it's part of an exit system. It's not their award in a sense because it's an exit award. It's part of this overall system of award, annulment, resubmission, all contained under the same case number. But I'm not sure that that can be done. It may, but I don't believe there's anything that gives it, give that court something. Sorry, I have, isn't it rule article 55-3? Am I wrong about that? It might be a rule or article. Let me get to the rules here. Oh no, I think I've got the wrong citation. Nevermind. It's not 55-3, whatever it is. I'll have to find it for you. Okay. I'm happy to do it. No, not the article itself. Does it have its own rules? It has rules in addition to articles. Yes. I misspoke. Is it rule 55-3 is what I have is allowing them to stay. You're right. Thank you. It may stay or continue. Okay. So there you go. There's the express authority to do, to do this. Up to the discretion of the tribunal. There's no other rules with regard to how that can be done, but you're absolutely correct, Your Honor. We could under 55. Well, it refers you back to rule 54. That has this process for stays. I don't know what the effects of asking for a stay would have been. It's like filing a motion for the arbitration panel or the committee to enter a stay. No, Your Honor, but I would just say in the rules of exit, which is not even the convention, the convention is the truth. Now we're talking about rules of exit. Those rules of exit cannot override this court's rules regarding a complete arbitration. Imagine these rules are being in the process of being changed now. What rules are you talking about? Well, we're talking about rule 55. No, no, no. You're saying the rules of the court. I'm sorry, the rules of exit. There's a convention which is not being overridden by it. What rules in this court are you talking about? They can't be overridden. I'm saying the complete arbitration rule is something that... The arbitration rule. Yes. Do you have a... What authority applies a complete arbitration rule to this review of this tribunal? Well, I think in that it's an arbitration, Your Honor, it's the only thing I can say, because this has never been litigated, because that's such a unique case. It's overruling some sort of rule of this court if it's never been litigated. Well, I agree, and I don't think it does. What I'm saying is that these are exit rules. This isn't the exit convention, and I don't think that a rule that exit promulgates with regard to how it handles arbitration can prevent this court from using or somehow vitiates the complete arbitration rule in this court. I just don't think that that can happen in this case. How wrong of this court are you saying it vitiates? I'm saying what the... What I've heard here this morning, Your Honor, is that there's a discussion that these rules provide a stay, and therefore, if there's an ability for a stay, and there's this issue of the award being enforced, that therefore, that makes the complete arbitration rule not applicable, because... What complete arbitration rule is it that you say applies in this case? Give me a citation that you're... Sure, Your Honor. The complete arbitration rule that's laid out, for example, in Berkowitz v. Republic of Costa Rica... That was not this kind of arbitration rule. It was not. It's never... There's never been... There is no rule of this court with respect to completeness on this type of arbitration, right? It's never been litigated, Your Honor, if that's what I'm saying. How can you say we're vitiating? It'd be vitiating the rule to do that if there is no such precedent. Never been litigated, and you keep coming up with the rule of completeness. I'm not sure how you can say there is such a rule that governs this case. Your Honor, I would say the Berkowitz v. Republic of Costa Rica is an investor state arbitration case, just like this case. It's in a different forum. It was in a forum under what we call the UNCITRAL, the UN's arbitration rules, and not under the ICSID forum, but it's still an investor state arbitration case like this case. It's the same arbitration. It's just administered by a different one. So what we would suggest, because it's never been litigated before, as far as we know, is because this is an arbitration that we're talking about, the TICO, the Guatemala holdings, the Republic of Guatemala is an arbitration, that the complete arbitration rule should apply. And the reason for that is there's a... The idea behind that complete awards from coming in and coming in piecemeal, and that can be done in an ICSID arbitration in the same way that it can be done in this Berkowitz v. Republic of Costa Rica case, where it's done in an investor state. So this is an arbitration... Who reported with that Puerto Rican case? I'm sorry, can you repeat that, Your Honor? Was that our case, the Puerto Rican case you just cited? I cited the Berkowitz case, which is, it was a Judge Leon case, I believe, and... Was that that case, or is that an F-sub case? It's an F-sub case, 288 F-sub 3rd, 166. It was not a decision of this court, it was a decision of the district court, right? That is correct, Your Honor. But this court has looked at complete arbitration rule cases. If you'll give me a moment, Your Honor. The American Federation of Government Employees versus the Federal Labor Relations Authority, D.C. Circuit Case 1985-777-F2-751 also addresses a complete arbitration rule. With regard to an arbitration, that certainly was not an ICSID arbitration, it was against the FLRA, but it was an arbitration, and this rule was invoked by the D.C. Circuit. That was where we didn't have any such rule, but we looked to another system and decided we would adopt that approach. So that supports your thesis here. I believe that's... Yes, Your Honor. This court, where there's a question of first impression such as this, could adopt this complete arbitration approach in the context of ICSID, and it would not be contrary, in your view, to anything in ICSID itself. That's right, Your Honor. It wouldn't be contrary because the ICSID talks about enforcement, not when that gets enforced. It's up to this court to decide how this court should be run in terms of allowing piecemeal awards to come in. But what I'm trying to understand is, I'm sure you know better than I, the legislative history of ICSID was this was supposed to be fast, it wasn't supposed to drag on for years, so that while the convention starts out by defining the word award as all the questions presented to it, then when it comes to its discussion of enforcement, it redefines what is an award for purposes of enforcement. And so that's what got me started on... I mean, it's interesting, your counsel for the courts here in this argument, as opposed to counsel for your client, because I was thinking of, from your client's perspective, that ICSID does offer a way to avoid, or at least to request, that an award not take effect immediately. So were your clients successful, and that's where Judge Millett's question is key, and you think, well, it's a matter of equity and we don't know, we don't have a pattern here, yet from the ICSID practice for the courts to have this leeway. Yeah, because again, I think that the question is whether or not an award can be enforced, not when. There's nothing in the ICSID convention or even the ICSID rules... I agree. I was referring to the legislative history, that this is supposed to be a fairly quick process and you couldn't come to the courts like you can under the New York Convention and under the Federal Arbitration Act and raise all these issues. Here's the award, you have to give full faith and credit to it, end of discussion. But it doesn't say, you argue, that the court can't decide as a matter of its own control over its docket when it's going to consider the application for enforcement. It could just hold it in abeyance, arguably, for years while the matter is litigated back and forth under ICSID. Yes, and I think it should. The ICSID system is what it is and the... Sorry to use that phrase, but the ICSID system is what it is and the claimants had the option of choosing different systems, they decided to choose the ICSID system. But we should, in my view, in the client's view, wait until there is a final determination of the dispute. When you look at the complete arbitration rule, and I can give you case authority on this, it talks about the disputes being done. So let me ask you, if we had a state court judgment that a party was seeking to have the district court here enforce, and under the state law, it was a final judgment, enforceable in that state, just under my hypothetical, how could this court say, well, we want to wait until all the appeals are resolved and everything because we don't think it's a final enforceable judgment or a final enforceable order? Again, I would say I don't know of a situation like that, but just to use that as a hypothetical, full faith and credit also does not require an instant... The other thing that I would... But all I'm getting at is, and the district court explored this to some extent, what controls where we're talking about the enforcement of a judgment of a state. It's sort of that hands-off approach. And just because other things involving the parties are still going on in the state, full faith and credit says we don't look behind what the state has said is a final enforceable judgment. I just... It's interesting. Yeah. Your Honor, if I may, because this goes... When the district court did that, it was in the context of these Rule 60 defenses, which we haven't discussed. But about that, let me say that one thing that makes this different from Rule 60, as we say in our brief, was the codification of the common law, things to allow good equitable reasons to challenge something. The difference in this case is that a state court judgment, if I had a judgment from Florida, I could go to Florida and have mechanisms to be able to challenge that decision. In the system, the... You wouldn't have any mechanism to challenge that state court judgment in federal court under Rule 60. Well, I would argue that... There's a part in the brief you'll see that we argue that you could. There's courts that have done... There's no court that I could see of any of your cases that applied Rule 60 to revise a state court judgment. Yes. It's not totally clear you can... One district court can do it to another district court. That's an open question. In at least many circuits it is. But that... We're talking here about crossing federalism lines here and having a federal court grant Rule 60B to revise a state court judgment. I've never seen such a thing. I agree, Your Honor. I haven't seen it either. There would be issues with federalism. The fact that the rule doesn't apply. I mean, the federal rules could not adopt such a dramatic change in the legal order. You don't have that authority as a matter of the Rules Enabling Act. So... Right. It would be an awful lot of freight Rule 60 would be carrying there. I think, Your Honor, you're absolutely right with regard to federalism, with regard to it not being done with regard to state courts. The issues that would be... We're not asking that, obviously, this be applied to state courts, but we think that... Well, but the test here is we're supposed to enforce exit judgments the same way we would a final judgment from a state court. And so that's why I didn't understand your Rule 60B argument because we would never, in applying full faith and credit, rely on Rule 60B. Right. It would only be subject to full faith and credit. I think that's correct. The difference here is that state courts have mechanisms by which this can be challenged. So what? What does that have to do with whether we should move ahead to enforce this or that arbitration? Or that judgment will arbitrate the rule? So they have ways in which it can be challenged. It can be challenged in state court, but that doesn't have anything to do with whether we enforce the judgment that we're going to enforce, does it? Well, your Honor, I would say that there are... The exit system has a 120-day period for annulment. There is a three-year period, if there was corruption, limited only to the corruption of an arbitrator, not for any... You're saying we can hold off on enforcing judgment until that time period, you say? I'm sorry, can you ask that again? Anything in the law that tells us not to go ahead and enforce? Well, I think the question is whether or not this court should extend Rule 60. This is a question that's never been considered before. Even the full faith and credit has never been considered before. The appellee is arguing that even full faith and credit is not applicable here. They argued that in the brief, but the court did apply a limited full faith and credit view. But we think that the purpose of Rule 60 is to have an equitable provision to be able to get relief from a judgment when needed. And when the exit system does not have those mechanisms by which you can bring it after 120 days, unless it's corruption, and even then after three years. So just a hypothetical on my end, if I may. Can I just be clear? You keep... As I understand it, your theory, even under this argument in your discussion with Judge Santel, is that your client had no ability to challenge the awards within the exit system. And our discussion has been focused on, well, exit does give you this stay opportunity, at least to opportunity to request a stay. And if you don't request a stay, I don't know if it's an exhaustion type analogy, but you haven't taken advantage of what is available to you. And by analogy to your most recent discussion about Rule 60B, what you might be able to do in a state in challenging a state court judgment. So to hear the argument would be under the convention, you could seek annulment with your client, file the motion to annul the entire initial award. You could seek revision, and you could also seek stay so that whatever award was entered did not take effect immediately. Your Honor, from your question, I would note again that this is not really an arbitration rule. Judge Santel knows maybe it's implied, maybe it's not. But if it is applied to this case, which we believe it should be, it's the court's rule. It's the court's view of how something... So there's not an exhaustion in one proceeding, none related to the court, that would exhaust something with respect to the court. Yes. No, I understand that. But I keep focusing on you as representing your client. What does your client get out of this by the courts adopting this procedure you're urging? Because my client, who could be before this court again in a decision, lots of sovereigns are, especially in this circuit. No, I understand. So they could be before again. We think that the rule... We think it was improper of Pico Guatemala Holdings to bring the... We think an enforcement action should not be brought in these unique factual circumstances, which is different than other factual circumstances. We think it should not have been brought until the arbitration was complete. It continues to go on. It will go on potentially for some... Some arbitration is going on, but not the arbitration that is the procedure in this award that this enforcement is thought of. This proceeding is over, isn't it? I mean, the award is final, isn't it? No, Your Honor. I wouldn't say that it's over because the arbitration continues with the same case caption, the same case number. It's still all part of the exit system. We think the arbitration is still very much going on. Well, it's better than that for you. I mean, you're missing the best part, and that is that they're still adjudicating interest on the very claims that they seek to enforce here. At least the time the district court ruled here, you hadn't had interest resolution certainly on cost, and there was the pre-sale interest, and both of those applied to the historic loss claim, not just the loss value claim that was being adjudicated for the first time by the second total recovery for the historic loss claim has, as of now, not been resolved. Finally, subject to... I guess it would be if this latest tribunal decision gets no more review. Right, and that's completely correct, and thank you, Your Honor, for noting that because it is correct that the interest on the historical losses continues to be litigated, was litigated in that case, is subject to an annulment, and could go on. So even under this idea that there's two claims, that there's a historical loss claim and a loss of value claim, that the historical loss claim continues to be litigated in the second arbitration, and along those lines, it's not proper to state that this is two claims. If you look at what happened in this case, the district court correctly notes, and this is that joint appendix, page 791, that the claim was the allegation that the Republic of Guatemala breached a provision of the DR-CAFTA. That was the claim that was brought. Somehow, this turned into something with damaged components being part of a contract claim, where somebody comes in and says, hey, you breached my contract, but with regard to damages, I want compensatory damages, I want damages, I want the money I paid refunded to me because you never delivered, and I want cover. Those aren't, the demand for the money to be repaid because the item wasn't delivered is not a separate claim from cover, in the same way that historical losses are not a separate claim from loss of value. They're just ways to calculate what the damage is. You don't need to go that far in this case. You can say the historical, even if we assume the historical loss and loss of value are two separate claims, you still don't have final resolution on complete recovery for the historic loss. You don't even need to cross go as far as you're arguing, do we? That's correct, your litigation at this time. Let's follow up on that. Suppose this third aspect of this same case number, that there is no further request for annulment within 120 days. Then TICO files a motion for enforcement. Is there anything left before exit? If there's no application for annulment made, then no. Then that wouldn't affect the Rule 60 issue. I understand, but in terms of your rule on completeness? Yes, that's correct, your honor. It would be final. We believe that's what TICO should have done is to wait for that, but it would be final at that point. I know the court knows this much better than I do. I am here arguing for my client, but this court's decisions get researched and spouted by lawyers like me all the time. A decision that says that you can give piecemeal or that you can continue to do awards, it could be subject because we don't know what's going to happen in the future. There's a sense in which this court's resources are better done by when you have a unique case, the case does not happen all the time, where there's a partial annulment and it continues to go on, the same party, same case number, to invoke the complete arbitration rule so that parties wait until the next hearing. Just one last question. I know we've held you way over here. When people ask the tribunal, the second round one, to grant a stay, for whatever reason, do they usually explain why they grant or deny a stay? They do, but those decisions may be not ever disclosed publicly. But they're disclosed to the parties. The reasoning is- They're disclosed to the parties, yes. And are they secret or are there something the parties could disclose if they wish to? It depends on the confidentiality rules of the arbitration, which are itself probably confidential. And it could be varied and the parties could agree to disclose it. But typically, I will say typically in a case like this, the party cannot on its own start disclosing awards and rulings of the tribunal. It has to be agreed and has to be released in some particular way. Well, certainly the awards and rulings have been disclosed in this case. The two awards have been disclosed. That's my understanding. I didn't have access, for example, to the second award until the parties agreed that it could be- I assume the parties agreed it could be made. It gets published and everything else. As counsel, even though I represent the Republic of Guatemala, I'm not counsel in that case. And there's confidentiality provisions that apply. So I didn't get it right away. And so it's not the case necessarily that these things become public. It's more typical for the final awards to be public, although that's not always done either. But it's more typical for the final, you know, when you have a final resolution to be public. But interim awards often take place in procedural orders. They're oftentimes not made public. I'm sorry. I do- I'm sorry. I want to be clear about something I realized. This is a D.R. CAFTA case. My apologies. I just set my mind for a moment. There are provisions in D.R. CAFTA that provide for transparency that are not done in all exit arbitrations decisions. So in this case, those decisions should be, after a short period of time, be made available because it's part of D.R. CAFTA. So in this particular situation, there would be more transparency. Okay. And does D.R. CAFTA have any provisions on finality, stays, or arbitration that would be relevant here? Or do we just look at everything through the exit lens and not through the other underlying- the treaty that triggered the exit process? I believe in this case, you would only look at exit because there's- D.R. CAFTA provides different routes that a claimant could take. They don't have to bring proceeding under the inter-trial new rules. So I don't believe there's anything in the D.R. CAFTA that talks about stays or finality. I think that would be done through exit. But what that's really done through is through this court because it's the courts- it's for this court to determine whether or not something is complete and not for anyone else to force cases onto this court. Because of that, even though as I've argued, I don't think the convention does that. All right. So why don't we hear from counsel for Kathleen and we'll give you some rebuttal time. Thank you, Your Honor. Thank you. May it please the court. This is Andrea Menica from Whiting Case on behalf of the L.E. Tico Guatemala Holdings LLC. The district court here properly ruled that the exit final award in this case is entitled to enforcement and issued a judgment and this court should affirm the exit convention. It's Trevo perpetuar, the U.S. implementing legislation, its legislative history and jurisprudence all confirm and all establish that exit awards are not subject to the enforcement defenses which Guatemala raises. Can we talk about complete arbitration? There's background noise again. Can we talk about complete arbitration and the lack of finality just on the historic loss claims? Because that has not been resolved. You're still litigating interest. Part of the decision that was sent off to the second tribunal included the pre-sale interest for the historic loss claims and you've also got this interest on cost claim which put aside the whole loss of value. I'll just pretend it's not there. The historic loss claim has not been conclusively resolved. But your honor, the I'm right about that. The historic loss claim has not been conclusively resolved. Well that one year of interest on a historical loss claim and the cost award for a historical loss. Right. So it's not the answer is correct. It has not been conclusively resolved. Yes. Okay so it's not final. Well but what is final is the award taken together with the annulment decision and that is what is final and in exit parlance once you have an award that is enforceable. Imagine the annulment process had said we're not touching the determination of provision. Liability, not touching it, that's good to go. But we got to have a whole new proceeding on damages. Not just interest but damages. Well so you got to enforce the liability say you wanted to get some sort of declaratory relief or injunctive relief or something like that out of it or you wanted to you simply wanted to get on the record for purposes of other proceedings or ongoing behavior in Guatemala. You wanted to get on the record as final so they were liable for this so they wouldn't keep repeating the problem but their damages haven't been resolved. Would that be considered a final decision on an arbitral claim without damages? Well the only thing that is subject to enforcement and entitled to full faith and credit are the pecuniary obligations in the award. Okay. So in that instance you wouldn't have any pecuniary obligations. Okay so what if they said all the damages claims but the other half have to go back? You see and that's that's key here because ICSIT has no remand procedure and that's how it's done. All right go we're annulling the initial tribunal's decision on 80 percent of its damages determination but 20 percent of its damages determination we're not annulling we're not touching that. So now what we have is a liability decision but only expressly only 20 percent of damages and 80 percent of damages are still being fought over. Let's imagine that's the decision from the annulment committee. Okay can you enforce liability and only 20 percent of damages as a final award? Yes your honor and the reason is is because once you have the award with the annulment decision that is final it's subject to enforcement under convention. That doesn't as Judge Rogers pointed out that doesn't remotely fit the definition of um award under article 48 and there's internal conflict and that's not it's not dealing with every question submitted to the tribunal. But your honor that particular award would have dealt with every issue. The initial award would have dealt with every issue and then to the extent part of But they're not resolved. They're still being litigated. They're still being arbitrated. But your honor the thing is that the initial tribunal becomes frontis officio it's gone and then it is entirely at the discretion of the claimant whether it wishes to pursue a second arbitration or not. TICO could have chosen for instance maybe it got a second opinion to determine that. How do you what if what if the after annulment they said liability and this damages award is a mess? We're sure you're entitled to at least one dollar that's probably millions of dollars but for now we're going to hold that we're not going to annul liability or one dollar worth of damages but you got to go back and fight about the extra 300 million dollars in damages. Really? You could come to a court and make us do enforcement for that one dollar knowing we're going to have to do it all over again. I think technically one could whether one would for one dollar is another question. How would you how would you reconcile that with article 48-3? Because the award that was issued by the initial tribunal was a final award. It answered every single question. The annulment decision all it does is it takes away a part of award but that award still answered every question. And then the answer is wrong. But I think I'm not quite understanding how Judge Millett's approach is on this. Is the ongoing proceeding now capable of changing the award that was entered so far? It is not. It is not at all. As far as anything in the award. Okay thank you. Yes but it can add to the award. It could add to the award. It could add to the award and that's it. And that's why you grant a new award. It could grant a new award that would add more remedy. But as far as the subject covered in that first award it can't change it. Right? Absolutely. Absolutely. Judge sent out. And that that's the point is that Keiko again could have decided it didn't want to pursue the second arbitration for whatever reason. And unlike in a court where you remand a case there would have been nothing for anyone to do. You would not have had to close the case. It wasn't open. ICFID would not have had to do anything. It's unlike if a claim. If you didn't pursue the second tribunal then you would be done. You wouldn't have any opportunity to get more relief. You wouldn't be determining other claims that could actually offset against the initial claim. It would just you'd both be done and walking away. That's quite different from we're going to keep fighting about how much damages they owe. But again it is like a second arbitration where we are seeking additional damages. Guatemala never had a claim for offset. Had it had truly thought it had a claim? You've had a claim for damages. You had that same claim of damages before the first tribunal and now you're litigating it again before the second tribunal. Yes, but there is no final award for that and you're not seeking any court enforcement for anything after that for it to still be an arbitration. But that's absolutely correct. And the arbitration is not done. What do you do with the article 48 paragraph 3 definition of the award? So the initial award you say that's consistent with that because every question presented was decided. All right, so you would get three quarters of what you asked for. But you decided or your client decided it wanted to get 100% of what it asked for. So then I understood you to well we can come into court because in article 53 an award is redefined for purposes of recognition and enforcement. That's correct Judge Rogers because in 53-1 it indicates that the award is binding and not subject to any other appeal etc. And you can seek enforcement in 53-2. It defines awards to include any decision on annulment, revision, or interpretation. Go ahead, sorry. So it still maintains its character as a final award. And in fact and that is why if the second award as Judge Santel said it had no ability to change or anything that happened with the award. It can only give us an additional award and that one has been rendered as you know. And that is pursuant to article 55-3 where it specifically says that a new tribunal in every submitted case cannot reconsider any portion of the award that has been annulled. So then the question is following up on one of Judge Millett's hypotheticals. The way you're reading the convention as to article 53 and 55 and I suppose 54, the court, the federal district court, has no ability, you haven't argued this yet, but enforcement of the duly certified award. Even if it means that your client will be here every other month seeking enforcement in the same case as counsel says the original claim like on a contract. And so now we're just disputing forms of damages to which you're entitled. And so you could come back on every dollar for millions of dollars. The court has no ability and it's not contemplated that a court could hold matters in abeyance until it sees the final award. No, your honor. The court's obligation under the convention is to award. And ICSA defines what is an award. This was labeled as an award. It did deal with all the questions. Parts of it were annulled. Notably, after the annulment decision came down, the ICSA secretary wrote to Guatemala reminding it of its obligations to pay in full that award and said those amounts were full and owing and they were due. And did not indicate, it noted that it had been partially annulled, but said that Guatemala had failed in its annulment application. And so it was under a treaty obligation at that point in time to pay that award. And that is at JA 317 to 318. And that is four years ago now, October 26, 2016, when ICSA was saying this award is now final. It is due and payable. And Guatemala had the option, as you both noted or all noted, to seek a stay of enforcement of the stay program. It says you can file for a stay. It doesn't say you get a stay. So somebody, presumably the annulment committee, has to decide whether or not to grant a stay or the original arbitral community. And are there any standards? There are, Your Honor. So first of all, There are? Did you say there are not? There are. And what are they? So they're very similar to the standards that courts look at. So they look at the likelihood of success on the merits of the claim. They look at the balance of interest of the parties, whether one party will suffer irreparable harm. And we know this because, can you give us a citation? One can look to, and I don't have it on my fingertips, but even in this case, there was briefing on a stay of enforcement before the annulment committee. I can find several others for you later. That's different than what I thought you were telling me. In other words, you're saying the parties filed pleadings suggesting this is how you should look at whether you should grant a stay. But it's not as though, to your knowledge, we have any guidance. It's just a discretionary matter to be decided by the individual committee or tribunal. That's correct, Your Honor. It's not in the treaty itself or in the convention or in the arbitral. Are there rules? Nothing in the rules? No, Your Honor. So just the rule just indicates you can issue a stay. And I would note that the after it issued its decision in paragraph 382 subsection 10, I believe, it listed the stay of enforcement of the original award, the final award that we are seeking to enforce here. So it clearly saw its annulment decision together with the original award as being final and enforceable at that point in time. And then Guatemala had the option to go to the second award pending the completion of the second arbitration. What is the theory under which if the second tribunal has no authority over these claims that were not annulled, then what authority do they have to stay enforcement of those claims? I mean, it's like they have no authority, but they have authority. They still have jurisdiction over those very claims. That seems odd. I would think in this circumstance, it wouldn't have made sense, which is why Guatemala didn't do it. I'm not asking a strategic decision not to seek a stay. It's in the rules that in any case, you can seek from the new tribunal, if a new tribunal is called for, a stay of the non-annulled provisions. And that seems to me to suggest that they still have jurisdiction over those claims, at least to the extent to the ability to give a stay. So that seems odd. It may be a little odd and I haven't seen a situation where a stay has been granted in such circumstances, although one could actually imagine. Yes, no, it is in the rules. But one could imagine a situation where both parties achieved some sort of partial annulment or maybe there are counterclaims. And so they argue at the balance of interest and efficiency, they argue that almost as a set off, not that they can disturb the first award at all, but that it would be inefficient and our likelihood of success on our counterclaims, for instance, is so great that and we would be unable to recover for whatever. They are changing the non-annulled award if they grant a stay because presumably the stay keeps interest for money. The stay wouldn't prevent interest even if something enforcement has stayed and then they're still going to hit him for interest when it didn't have the ability to pay it because it was stayed. Yes, your Honor, the practice has been that it does not stop interest from running during the stay of enforcement that was in place during the annulment proceeding. Even though you have a stay, interest continues to run on a judgment even before it's lost. That's correct, your Honor. Sorry, go ahead and finish your question and answer. Sorry. I was just going to say that it continued to run on our award during the annulment when there was a stay in place. That's good to know. Now, I had another question because we're supposed under the ICSID, the convention, enforcement by court is to be in sort of the same manner as we would give full faith and credit to, for our purposes in the United States, the state court judgments. Do you know if, a final state court judgment, do you know if in deciding whether a state court judgment is final, do we give full faith and credit to their decision that it's final? For example, if you had a contract dispute and a state court did what ICSID has done here, or it was in my hypothetical, if a state court said you win on liability for contract, and damages here are incredibly complicated, we're going to have to have another proceeding on damages, but I'm going to give you an interim award of $1,000. I know we're litigating millions here, but whatever happened at the end of the day, you're at least entitled to $1,000. And so you have contract liability and $1,000, and now let's have a whole nother proceeding on the real contract damages here, which are in the millions of dollars. And I'm declaring that first part, liability on the $1,000 final. Do you know, I just don't have any idea, in full faith and credit, where finality is normally an argument you can bring to challenge the application of full faith and credit, would we defer to the state's, let's say state law considered that final, would we defer to that or be applying a federal test of finality for that? I haven't seen a case on point, but I would analogize that to the instance when a federal court in determining the preclusive effect of a state court judgment looks to the rendering court, the state court, to see if it considers that judgment to have preclusive effect. And so in the same way, I would think that the federal court would similarly look to the state court to determine whether it deems its judgment to be final. Although the requirement of a final state court judgment itself in the constitution, right? It wouldn't seem to turn on state law finality. Okay. But then, but still... I don't know. I have no idea, but maybe we do, because you're right on preclusion and a lot of other things that happen. So, fair point. So, your honors, I see that I'm out of time. Unless you have more questions, which I'm happy to entertain, I will stop here. Does ICSA have law on issue preclusion between, for the, I don't know if I'm saying it right, the MDROLA decision? Yes. It's not so much that ICSA does, but the governing law and the arbitration was international law and there is an international law of res judicata, which actually is very similar to the law in the US. So, they look to an identity of the parties and identity of the cause of action, those types of things. In fact, often what they call the triple identity test. And here on that issue, as we briefed, you will know that in the arbitration, both the arbitral tribunal and the ad hoc committee looked in detail at the EVADROLA award and the effect on its award. And both of those tribunals found that the EVADROLA award had no preclusive effect. And of course it should not have had, because TICA was not a party to that arbitration, nor could it have been. That arbitration was under a different treaty, the Spanish Guatemala treaty. That tribunal would not have had jurisdiction over TICO and vice versa. Spain is not a party to the DRCAPTA and could not have brought its claim in our arbitration. That arbitration concluded over a year before ours did. It was represented the claimant by different councils. It was conducted entirely in Spanish. We had different legal theories of the case, different arguments. I would have thought the important thing is that the lack of jurisdiction seemed to turn on the fact that they were presenting claims under Guatemala law. And they did find jurisdiction over the one claim that seemed to implicate international law. That's right. And that arose out of the fact that it wasn't the same at all because it was argued differently. They had a treaty that provided them similar types of legal avenues that they didn't pursue. We argued our cases differently. We introduced different evidence, et cetera. But what's notable is that in our arbitration, what Guatemala argued, it never argued that the Ibadrola award had preclusive effect. It argued what I would say if I were urging this court to follow the reasoning of a Sixth Circuit decision, I would say it's not binding on you. It's not starry besides this, but I find the reasoning to be very persuasive. You ought to come out the same way. And Guatemala talked about the Ibadrola award. We had an entire round of briefing on it. And they said, look, Ibadrola award, of course, it's not preclusive. It's not res judicata, but they got it right. You should rule in the same way. We argued no, they got it wrong. And it's distinguishable for all of these reasons. And the tribunal agreed with them. And then similarly during the annulment phase, Guatemala again, never argued res judicata. It argued an annulment. The tribunal got it wrong. They should have come out the same way as Ibadrola and that was rejected. But they can't raise preclusion here. And it's not even a defense. Right. So that's a different question I wanted to follow up on. And that is for purposes of what in our court system we would call forfeiture. Again, is it exit or international law? Or what principles of forfeiture apply if they apply at all? Let's see, odd for them not to, but that's the whole point of arbitration. But where would we look for the principles of forfeiture in an exit proceeding? And Your Honor, when you're talking about forfeiture, I'm sorry, are you speaking of waiver that Guatemala waived? Waiver is a conscious decision not to raise something, whereas forfeiture is, we don't care what your mindset was. You just didn't argue it. You didn't present it. And so forfeiture would be, you didn't argue, for example, preclusion below. Doesn't have to be a conscious knowing waiver if you didn't argue it below. That's right. That's right. Is the rule of law, would it also be international law again? And is it sort of the same as what we do for forfeiture in this system? It's very similar, yes, insofar as they would, in an annulment proceeding, for instance, you can't initial tribunal's award on the ground in which you didn't challenge in the underlying arbitration, unless, you know, it's newly discovered evidence or something like that. But you can't, particularly on a procedural point, you can't criticize the tribunal for not doing something when you didn't bring it to its attention. Is that an annulment of exit, or is it just customary international law? Where would we look to find that out? That would be in, certainly in the jurisprudence. It's not in a particular exit rule. So it would just be a general principle of international law along the lines of estoppel. It would be, it's false law, it's not hard law, it's not treaty law, it's customary international law. That's correct, Your Honor. Thank you. And I note, for instance, in the System v. Kyrgyz Republic enforcement case in the Southern District of New York, that was under the Exit Additional Facility Rules. So it was a New York Convention FAA review. But there, the court found that the Kyrgyz Republic could not raise one of the jurisdictional objections, or its main jurisdictional objections, because it has failed to make it before the arbitral tribunal. Thank you. Thank you. I don't think we're hearing Judge Rogers. Are you muted? I hear you. Counsel, can you hear me? Yes, I can hear you now. All right. So, counsel for appellant, we'll give you a couple of minutes for rebuttal. Thank you, Your Honor. I was able to find some additional cases where there was a stay granted by courts in this district, and I'll give those to you now. Infrastructure Services v. Kingdom of Spain. It's case number 18-CV-014. Maybe you could just send those in a letter. I'll send those in a letter. There were several cases where the stay was granted. I'll note in those cases, as you'll see in the letter, that those, there's a particular case called Next Era v. Spain. And just before you go on, are those exit cases? These are exit. These are all exit cases, yes. There's a case, Next Era v. Spain, where the court granted a stay, I think it was in September of this year, the court granted a stay on the enforcement of an exit award. And in that case, the counsel for the claimant, Next Era, argued, I'll send this on page five of this Next Era decision, argued that the court's inherent, this is what counsel was arguing for the claimant, court's inherent authority to stay cases is limited by the exit's determination to lift a stay. Because in the three cases that I'm talking about, exit had lifted, had had a stay, had lifted it, and then the parties requested that the court implement a stay. And in all those cases, even though exit had lifted the stay, the court continued with the stay. The court continued or gave a stay. So I don't think, there was a discussion of having no authority and, you know, this court having no authority to prevent the enforcement based on what the exit rules or the exit conventions say, and I just don't think that can be correct. Because this court has to decide for itself what, it's not a question, I'll just say this again because it's so important. It's not a question of whether or not an award can ever be enforced, it's whether or not it's final, such that this court wants to have and hear cases in that regard. Did any of those cases involve, and I know you'll send them, I'm just asking a general question, a situation where no one had asked exit for a stay one way or the other, and they just came to court and asked for it first? These three cases, there was a stay requested before exit was granted and then later removed. I see my time's up on rebuttal. I certainly have more things to say, but I'll leave it to you. Anything critical? I thought we had more to say. Anything critical? Well, I do want to say with regard to the, with the list pending with the race judicata, the preclusive effect issue, is that our argument there is that the court, when, the mechanism here is so different, to be treated as a final judgment. And I think that TICO wants the advantages of that, but without my, without what else might come before it. It's true that the issue of stare decisis, for example, isn't an international law, but there may be, the mechanism's different. This is a unique case because of the way it's coming in. So, so I wanted to note that. I also wanted to state that I don't agree with petitioner's counsel that a exit tribunal would not hear an argument in an annulment proceeding that wasn't raised before, in particular, a case in which White and Case was the, was the respondent, and I represented the claimant, a case called Frat Port v. Philippines. There was an argument made, for example, in the, in the annulment, an argument over whether you can be punishable for a crime without law that was not made in, in the, in the case in chief. So, I just, there is no rule. It's on a case-by-case basis, and I think there are examples where those have been heard. There's not some automatic right of forfeiture, which you might have, for example, in a U.S. court. So, with that, your honors, I thank you very much. Is that case you just cited in your brief? It's not because I didn't. Maybe you could, could share that with us, but that involves something still being raised in the arbitration process, and not for the first time in a court. Right, that was an arbitration process thing, and it was done now many years ago. Right, and it's the notion of the complete discretion of the panel hearing the matter. Right, the panel has the discretion. There's no rule that's conceded by petitioner's counsel. The panel has the discretion. All right. Thank you, counsel. We'll take the case under advisement. Thank you.
judges: Rogers, Millett, Sentelle